RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0483p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JAMES FOX,

    *Plaintiff-Appellant,*

    *v.*

    No. 07-5203

EAGLE DISTRIBUTING COMPANY, INCORPORATED,
    *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 05-00476—Robert Leon Jordan, District Judge.

Argued: October 30, 2007

Decided and Filed: December 14, 2007

Before: SILER, COOK, and GRIFFIN, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Margaret Beebe Held, HELD LAW FIRM, Knoxville, Tennessee, for Appellant. G. Gerard Jabaley, BURROUGHS, COLLINS & JABALEY, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Margaret Beebe Held, HELD LAW FIRM, Knoxville, Tennessee, for Appellant. G. Gerard Jabaley, BURROUGHS, COLLINS & JABALEY, Knoxville, Tennessee, for Appellee.

_____

**OPINION**

_____

GRIFFIN, Circuit Judge. Plaintiff James Fox filed a civil complaint against defendant Eagle Distributing Company ("Eagle"), alleging that his former employer Eagle violated his rights under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, the Tennessee Human Rights Act ("THRA"), TENN. CODE ANN. § 4-21-407, and the Tennessee Whistleblower Act ("TWA"), TENN. CODE ANN. § 4-21-407. Fox additionally raised a common law claim of retaliatory discharge. Fox now appeals from an order of the district court denying his Motion for Summary Judgment and granting Eagle's Motion to Dismiss or for Summary Judgment. Specifically, Fox argues that the district court erred in granting summary judgment to Eagle on his retaliation claim under the ADEA. Finding Fox's appeal to be without merit, we affirm the order of the district court. In so doing, we hold that Fox's complaints to an Eagle customer about his relationship with Eagle were not protected activity under the ADEA.

1

I.

Fox began working with Eagle, an Eastern Tennessee beer distributor, in 1991.  Fox's performance evaluations were consistently positive, and he regularly received promotions.  Fox was eventually elevated to the position of team leader, where he supervised a team of five salesmen.  On February 5, 2002, approximately thirty days after Fox's fortieth birthday, Fox's supervisor, Mike Craig, informed him that he was being demoted and that he could accept a position as a salesman or be terminated.  A memo written by Craig, dated January 11, 2002, placed in Fox's personnel file explained the demotion:

> This week I met with each of Jim Fox's salesmen to prepare for Jim's review.  Four of the five salesmen that work under Jim were not please[d] with his efforts as their supervisor, mostly citing lack of communication and follow up with customers as their main concerns.  Only [one salesperson] offered no opinion.

> I met with Bob Winkel [General Manager for Eagle] and discussed the results of my meeting with him.  I told Bob that based on Jim's tenure with Eagle and his past success as a bulk rep and salesman, I thought Jim could be a valuable employee in another capacity.  We decided at this time to leave Jim in his current position until our market visit with [a supplier representative] was behind us.  After that, the first available route position would be offered to Jim[.]

Fox accepted the salesman position and continued to work for Eagle.

Fox subsequently applied for other positions within the company.  After being denied a promotion to the bulk sales position to a younger man who had less experience with Eagle, Fox filed an EEOC charge with the Tennessee Human Rights Commission, alleging age discrimination.  He then filed a lawsuit in Tennessee state court in February 2003, alleging age discrimination in violation of the THRA.[1]  Fox was vocal about his displeasure with Eagle and admits that he discussed his pending lawsuit with co-workers and customers of Eagle.

On June 28, 2004, an assistant manager at Weigel's convenience store, an Eagle customer, called Eagle to complain about Fox.  The manager informed Eagle that Fox had delivered beer to the store, but before checking the cases in, Fox left the store and "got into a car with someone in front of the store," leaving the cases of beer in the aisle and blocking the path of Weigel's customers.  The manager reported that Fox left the cases of beer in the aisle for thirty to forty minutes before the store's assistant manager tracked him down and asked him to clear the cases off the floor.  The manager also informed Eagle that this incident "was not the first time and that it had been going on for over a month."  A memo from Eagle employee Mike Thomas, dated August 4, 2004, summarizing a meeting between Fox and Winkel held in response to the call, stated that "Bob [Winkel] explained to Jim [Fox] that he would be terminated if Eagle received another customer complaint" and that "Bob restated to Jim that he would be terminated if Eagle Distributing received anymore [sic] customer complaints."

In late January or early February 2005, Fox's supervisor, Todd Lawson, was visiting an Eagle customer's store and asked about the performance of Eagle's salesmen. Lawson later testified that the store's manager, Bonnie Poplin (also referred to as Bonnie Satterfield), rolled her eyes in response and stated that Fox had discussed with her a ten million dollar lawsuit that he filed against Bob Winkel and Mike Thomas and that Fox had remarked that "it was something that would get their attention."  A memo to Fox's personnel file, dated February 3, 2005, recounted the exchange:

---

[1] This lawsuit was dismissed without prejudice in February 2005.

Bonnie Satterfield (Manager for Pilot #207) stated to Todd Lawson (Eagle Area Manager) that "it took a while to get use[d] to Jim".

Ms[.] Satterfield stated to Todd that Jim was very vocal about suing Eagle Distributing. Ms[.] Satterfield states that Jim makes statements about Bob Winkel and Mike Thomas and "how upper management is out to get him" and how they (Bob Winkel and Mike Thomas) prevented him from becoming a pre sell rep.

* * *

Ms[.] Satterfield stated that Jim informed her that he was suing Eagle, Bob Winkel, and Mike Thomas for $10,000,000.00 and that should get our attention.

Ms[.] Satterfield states that Jim is always talking about his lawsuit against Eagle Distributing.

Eagle interpreted Poplin's discussion with Lawson to be a customer complaint and terminated Fox's employment on February 5, 2005. In a Termination of Employment Notice, Eagle explained the reasons for Fox's termination:

Jim has expressed his malcontent to employees and customers. His poor attitude impedes the ability of EDC to develop a positive work environment and good customer relations.

Fox filed an EEOC charge with the Tennessee Human Rights Commission on July 13, 2005, alleging retaliation, failure to promote, and termination of his employment. Fox then filed the present lawsuit in the Chancery Court for Knox County, Tennessee, on September 15, 2005. As amended, Fox alleged that Eagle violated his rights under the ADEA, 29 U.S.C. §§ 621 *et seq*., the THRA, TENN. CODE ANN. § 4-21-407, and the TWA, TENN. CODE ANN. § 4-21-407. In addition, Fox raised a common law claim of retaliatory discharge. Eagle removed the case to the United States District Court for the Eastern District of Tennessee.

On October 11, 2006, the district court entered an order denying Fox's Motion for Summary Judgment on his ADEA retaliation claim, and granting Eagle's Motion to Dismiss or for Summary Judgment. The court held that Fox's age discrimination claim failed because Fox had not offered evidence to show that Eagle's stated rationale for demoting and eventually firing him was a mere pretext for age discrimination. The court held further that Fox's retaliation claim as it applied to his demotion failed because he could not establish a causal connection between his EEOC activity, which first began in June 2002, and his demotion, which occurred four months earlier in February 2002. The court then held that Fox's retaliation claim as it applied to his termination also failed because his discussion with Poplin about his displeasure with Eagle was not "protected activity" under the ADEA. Finally, the court declined to exercise pendent jurisdiction over Fox's state law claims.

Fox responded by filing a motion for reconsideration, which the district court subsequently denied. This timely appeal followed.

II.

As an initial matter, we note that Fox's appeal is quite limited. Fox does not challenge the district court's order as it applies to his ADEA age discrimination or state law claims. Those claims, therefore, are abandoned and are not before this court. *See Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998). Further, Fox does not contest the district court's disposition of his ADEA retaliation claim as it applies to his demotion in 2002. Rather, he argues that he was fired in retaliation for his

conversation with Poplin in 2005 and that this discussion was "protected activity" under the ADEA. We disagree, and affirm the district court's order in its entirety.

The anti-retaliation provision of the ADEA provides in pertinent part:

It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this [Act].

29 U.S.C. § 623(d).

In order to state a claim of retaliation under the ADEA, Fox must show:  (1) that he engaged in protected activity; (2) that Eagle had knowledge of his protected conduct; (3) that Eagle took an adverse employment action towards him; and (4) that there was a causal connection between the protected activity and the adverse employment action.  *Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 381 (6th Cir. 2002).**[2]**  We have explained that Title VII's anti-retaliation provision is similar in relevant respects to the ADEA's anti-retaliation provision, and that it is therefore appropriate to look to cases construing Title VII as a source of authority for interpreting the ADEA's anti-retaliation clause.  *Wathen v. General Elec.*, 115 F.3d 400, 404 n.6 (6th Cir. 1997) (observing that the supervisor liability sections of the ADEA and Title VII may be interpreted interchangeably); *see also Butts v. McCullough*, 237 F. App'x 1, 6 n.3 (6th Cir. 2007) (unpublished) (same).  Notably, an employee need not file a formal EEOC complaint to engage in protected activity – rather "it is the assertion of statutory rights" that triggers protection under the ADEA's anti-retaliation provision. *EEOC v. Romeo Community Schs.*, 976 F.2d 985, 989 (6th Cir. 1992) (citing *Love v. RE/MAX of America, Inc.*, 738 F.2d 383, 387 (10th Cir. 1984)).

We conclude that Fox's discussion with Poplin is not protected activity under the ADEA and, therefore, Fox has failed to establish a prima facie claim of retaliation.  Specifically, we hold that Fox's statements to Poplin are not protected because they did not amount to opposition to an unlawful employment practice by Eagle.  In order to receive protection under the ADEA, a plaintiff's expression of opposition must concern a violation of the ADEA.  *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1313 (6th Cir. 1989) (holding that employee's allegation that manager is a racist is not protected activity under the ADEA because "the allegation is not that Brown & Williamson is engaging in unlawful employment practice, but that one of its employees has a racial intolerance" and that charge of "ethnocism" is too vague to constitute opposition to an unlawful practice) .  That is, in order for Fox's comments to Poplin to be deemed protected activity under the ADEA, Fox must have referenced alleged acts of age discrimination by Eagle.  As we have explained:

a vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice.  An employee may not

---

**[2]** In his reply brief, Fox argues that because Eagle admits that it terminated his employment in part due to his conversation with Poplin, he has presented direct evidence that Eagle retaliated against him, and therefore he does not need to satisfy the traditional *McDonnell Douglas* burden-shifting analysis. Regardless of whether Fox has offered direct or circumstantial evidence, he must show that he was terminated in retaliation for engaging in protected activity. Because he did not engage in protected activity by discussing his case with Poplin, we need not decide whether Eagle's admission that it was partially motivated by Fox's statements to Poplin amounts to direct evidence of retaliation.

invoke the protections of the Act by making a vague charge of discrimination. Otherwise, every adverse employment decision by an employer would be subject to challenge under either state or federal civil rights legislation simply by an employee inserting a charge of discrimination.

*Id. See also Willoughby v. Allstate Ins. Co.*, 104 F. App'x 528, 531 (6th Cir. 2004) (rejecting claim that letter sent preceding retaliation constituted protected activity where letter made vague references to unhappiness among Caucasian employees); *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701-02 (3d Cir. 1995) (holding that plaintiff's letter to Human Resources complaining about unfair treatment in general was not protected activity under the ADEA because letter did not specifically complain about age discrimination).

Here, the record does not contain any evidence that Fox specifically alleged discriminatory employment practices in his discussion with Poplin. In her affidavit, Poplin states that Fox mentioned suing Eagle and "that he had made comments about not getting promoted to a pre-sell position."[3] The memo written by Mark Thomas in Fox's personnel file states that Fox was "very vocal about suing Eagle Distributing," that Fox told Poplin "how upper management is out to get him" and how Winkel and Thomas prevented Fox from becoming a pre-sell rep. Fox further told Poplin that he was suing Eagle and suggested that the lawsuit would get Eagle's attention. Although Fox's lawsuit against Eagle alleged age discrimination, Poplin did not state – either in her affidavit or as recounted in the personnel memo – that Fox alleged that he was denied the promotion due to age discrimination or that Eagle engaged in any unlawful employment practices. Moreover, in his own deposition, Fox denied making any derogatory statements about Eagle and its management, and testified that, although Poplin was aware that he was suing Eagle, he was "not sure how [her knowledge of the lawsuit] came about."

We are mindful that because this case arises from the district court's grant of Eagle's motion for summary judgment, we must make all reasonable inferences in Fox's favor. *See Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007) (on summary judgment, the "evidence must be viewed in a light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences"). Nevertheless, there is simply no evidence in the record that Fox told Poplin that he had been discriminated against on the basis of his age. Neither Poplin's affidavit nor Fox's personnel memo reflects any discussion of age discrimination, and in his deposition, Fox denied making any disparaging remarks about age discrimination by Eagle to Poplin. For us to conclude that Fox's discussion with Poplin constituted opposition to a discriminatory employment practice by Eagle would require us to go beyond drawing a reasonable inference in Fox's favor. It would require reading something into the record that simply is not there. Fox's vague charge that Eagle management was "out to get him" is insufficient to constitute opposition to an unlawful employment practice and does not merit ADEA protection. *See Brown & Williamson Tobacco Co.*, 879 F.2d at 1313.[4]

---

[3] At oral argument, counsel for Fox indicated that Fox had been unable to locate Poplin in order to depose her in connection with this lawsuit.

[4] Because we hold that Fox's statements to Poplin did not amount to protected activity because they did not involve allegations of discriminatory employment practices, we need not consider whether these complaints to an Eagle customer were sufficiently reasonable to warrant protection under the ADEA. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000) (observing that in order for conduct to receive protection under Title VII, the manner of opposition must be "reasonable").

III.

Because Fox's discussion with Poplin did not concern alleged acts of age discrimination, he has failed to show that he engaged in protected activity under the ADEA. For this reason, we affirm the judgment of the district court.