[Cite as *Parson v. Ohio Dept. of Youth Servs.*, 2011-Ohio-5322.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JENNIFER PARSON

 Plaintiff

 v.

DEPARTMENT OF YOUTH SERVICES

 Defendant   Case No. 2008-09970

Judge Alan C. Travis

<u>DECISION</u>

{¶1} This case was sua sponte assigned to Judge Alan C. Travis to conduct all proceedings necessary for decision in this matter.

{¶2} Plaintiff brought this action alleging claims of sexual harassment, disparate treatment and retaliation arising under R.C. 4112.02, and a claim of intentional infliction of emotional distress.[1] The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶3} Defendant hired plaintiff on September 4, 2007, as a juvenile correctional officer (JCO) at the Ohio River Valley Juvenile Correctional Facility (ORVJCF). As a condition of her employment, plaintiff was to serve as a probationary employee for one year, during which time she was ineligible for union membership and was considered an at-will employee. Plaintiff worked as a "relief" officer, meaning that she was deployed throughout the facility as needed, usually filling in for other JCOs who were on leave.

---

[1]On January 20, 2011, the court granted summary judgment in favor of defendant as to plaintiff's claims for breach of contract and violation of the Family and Medical Leave Act of 1993.

{¶4} Depending on her assignment or location within the facility, plaintiff was supervised at times by Unit Administrator William Klaiber. Plaintiff testified that she considered Klaiber to be a "bully" who was unfair and excessively harsh in his criticism of her job performance. Plaintiff stated, for example, that Klaiber "yelled" at her after she called a youth a derogatory name; Klaiber "hollered" at her for improperly handling a confidential tip provided by a youth; Klaiber "lectured" her for leaving an incident report in an unattended location; and Klaiber yelled at her for violating a rule that prohibited her from distributing commissary items to youths.

{¶5} According to plaintiff, Klaiber also engaged in what she construed as sexually harassing behavior, including singling her out for private discussions in his office; calling her once on a telephone within the facility and telling her that he was watching a security camera videotape of her; and briefly touching her shoulder once in October 2007, while telling her "to let him know if there's anything he can do."

{¶6} Klaiber testified that he occasionally supervised plaintiff and that he was also assigned on a few occasions to conduct investigations pertaining to her. Klaiber stated that he found on several occasions that plaintiff had violated institutional rules, and that he considered her performance to be "sub-par" in certain areas. Klaiber related that in addressing such issues, he used the same "verbal coaching techniques" with plaintiff as he did with other employees, and he explained that he generally tried to have such discussions in private so as to prevent other staff or youths from overhearing.

{¶7} Klaiber, who is now retired, acknowledged that over the course of his career at ORVJCF, he developed a reputation for being a "blunt" or "brash" supervisor, but he stated that he treated all employees equally and fairly. Klaiber testified that he never used profanity toward plaintiff; that, although he did not recall telling plaintiff that he was watching her on videotape, he did review aspects of her job performance by watching security camera footage, pursuant to an investigation which he was assigned to conduct; that he told all new JCOs, including plaintiff, that if there is anything they ever

had questions or concerns about, they could come to him; and that he did not recall ever touching plaintiff.

{¶8} Daniel Horner, who worked as a JCO for six years at ORVJCF and was supervised during some of that time by Klaiber, testified that Klaiber was "tough" and "assertive" in his dealings with all staff, regardless of gender. Horner also stated that it is routine for supervisors to review videotape footage of JCOs to monitor their job performance, and to telephone JCOs in regard to the same.

{¶9} Plaintiff related that on July 1, 2008, she complained about Klaiber's conduct to a supervisor, Mr. Salyers, who referred her to Karen Sizemore, Human Resources Manager for ORVJCF. On July 11, 2008, plaintiff met with Sizemore and inquired about the procedure for filing a complaint against Klaiber with defendant's equal employment opportunity (EEO) office. On July 15, 2008, plaintiff submitted her EEO complaint in which she accused Klaiber of being unfair and demeaning, but she noted that male employees "are also being treated in the same demeanor" and she made no reference to any touching or other sexual behavior. (Plaintiff's Exhibit 6.)

{¶10} Plaintiff testified that on July 22, 2008, a supervisor, whose name she could not recall, completed a 90-day performance review in which she received "satisfactory" marks in three of six categories. (Plaintiff's Exhibit 4.) According to plaintiff, this review was adverse in comparison to previous reviews. In describing her previous reviews, plaintiff testified that Salyers gave her an "on target" rating in an April 2008 "mid-probationary review"; that another supervisor, Joel Patrick, rated her as satisfactory in all six categories in a 90-day review in January 2008; but that another supervisor, Connie Evans, gave her satisfactory marks in only one of six categories in a 90-day review in December 2007. (Plaintiff's Exhibits 1, 2, 3.)

{¶11} Plaintiff testified that on August 8, 2008, she was summoned to a meeting with both the superintendent of ORVJCF and a union steward. At this meeting, plaintiff, the superintendent, and the union steward all signed an agreement to extend

plaintiff's probationary period by 90 days.  The agreement states, in part, that:  "[t]his extension is necessary in order to more fairly and thoroughly assess the performance of [plaintiff] and to address certain concerns regarding her job performance.  [Plaintiff] has been apprised of the areas that she needs to improve.  The extension, along with her obtaining a permanent bid, will allow her more time to attain the level of expectations for the position of Juvenile Correctional Officer at the Ohio River Valley Correctional Facility."  (Plaintiff's Exhibit 12.)

{¶12}     According to plaintiff, the July 2008 performance review and the extension of her probationary period caused her significant stress and led her to seek treatment from her primary care physician, Dr. Michael Martin.  Plaintiff testified that when Dr. Martin examined her on August 13, 2008, he wrote a note stating that plaintiff was under his care, that plaintiff "may return to work on 8/28/08," and that "[t]he patient's absence was medically advised."  (Defendant's Exhibit M.)

{¶13}     Later on August 13, 2008, plaintiff presented the note to Sizemore and requested a corresponding leave of absence.  Plaintiff acknowledged that at the time of her request, she had a balance of only 72 hours of leave, which was less than the amount of leave that she sought.  Further, inasmuch as plaintiff had been employed by defendant for less than one year, she was not entitled to take leave under the Family and Medical Leave Act of 1993.  See 29 U.S.C. 2611(2)(A).

{¶14}     Sizemore stated that because plaintiff had been advised by her physician not to work until August 28, 2008, defendant's policy on such matters prohibited her from returning to work until that date, unless she received approval from her physician to return earlier.  Sizemore testified that without medical approval to return sooner, plaintiff's options were to either exhaust her 72 hours of leave, after which time defendant would consider her "absent without leave," or to resign.

{¶15}     In contrast, plaintiff testified that Sizemore told her "you're obviously not working out," and told her to sign a form resignation letter, which she did, effective

immediately. (Plaintiff's Exhibit 13.) However, Sizemore testified that she neither told plaintiff to sign the letter, nor said that plaintiff was "not working out," adding that she had no knowledge of plaintiff's job performance.

{¶16}   On September 26, 2008, plaintiff filed her complaint in this matter. Subsequently, on February 12, 2009, defendant's EEO Manager, Rufus Thomas, issued a written response to plaintiff's EEO complaint, stating that his investigation did not substantiate that plaintiff's "supervision or discipline was conducted in a discriminatory manner." (Defendant's Exhibit C.)

**SEXUAL HARASSMENT**

{¶17}   Under Ohio law, "[t]o successfully prove a claim for hostile environment sexual harassment, the plaintiff must prove four elements: (1) the harassment was unwelcome, (2) the harassment was based on sex, (3) the harassing conduct was sufficiently severe or pervasive to affect the terms, conditions or privileges of employment, and (4) either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action." *Ballard v. Community Support Network*, Franklin App. No. 10AP-104, 2010-Ohio-4742, ¶7, citing *Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St.3d 169, 2000-Ohio-128, paragraph two of the syllabus.

{¶18}   As to the first element, there is no question that plaintiff did not welcome the alleged harassment.

{¶19}   Concerning the second element, requiring that the alleged harassment be based on sex, plaintiff admitted that Klaiber treated male and female employees the same with respect to his criticisms and his "harsh" or "degrading" demeanor; accordingly, such conduct is not actionable under a theory of hostile work environment harassment.

{¶20}    Plaintiff also testified that Klaiber harassed her by singling her out for private discussions, telling her that he was watching videotape of her, and briefly touching her shoulder while asking her to "let him know if there's anything he can do." However, plaintiff did not mention these allegations in her EEO complaint, and instead complained only that Klaiber had treated her, as well as other JCOs of both sexes, in a harsh and rude manner.  (Plaintiff's Exhibit 6.)  In contrast, Klaiber testified that he deliberately met in private with plaintiff any time that he critiqued her job performance so as not to embarrass her; that the only time he ever watched videotape footage of plaintiff was pursuant to an investigation that had been assigned to him; that he took all new JCOs aside and told them they could come to him with any questions or concerns, and that he did not recall touching plaintiff when he made this statement to her.

{¶21}    Upon review of the evidence, and weighing the credibility of the witnesses, the court finds that plaintiff has failed to establish that Klaiber harassed her in any way based upon her sex.  The court finds that Klaiber was more credible than plaintiff in describing the conduct at issue, and that the evidence does not show that such conduct was based upon sex.

{¶22}    Accordingly, the court finds that plaintiff has failed to prove her claim of sexual harassment.


**RETALIATION**

{¶23}    To establish a prima facie case of unlawful retaliation under Ohio law, the employee must establish: 1) that she engaged in a protected activity; 2) that she was the subject of an adverse employment action; and 3) that a causal link exists between the protected activity and the adverse action.  *Mowery v. Columbus*, Franklin App. No. 05AP-266, 2006-Ohio-1153, ¶21.

{¶24}    Plaintiff claims that she engaged in a protected activity insofar as she filed a complaint against Klaiber with defendant's EEO office.  The EEO complaint

relates that Klaiber was rude, degrading, and unfair to not only plaintiff, but also to other JCOs of both sexes. Indeed, the complaint states: "I thought that he just did not like females because of the way that Ms. Vest and I are treated until I realized that Mr. Reed and Mr. Gray are also being treated in the same demeanor." (Plaintiff's Exhibit 6.)

**{¶25}** For purposes of a retaliation claim, opposition to "demeaning and harassing conduct," without complaining of illegal discrimination or taking a stand against such discrimination, does not constitute a protected activity. *Murray v. Sears* (April 7, 2010), N.D.Ohio Case No. 1:09 CV 702, 2010 U.S. Dist. LEXIS 34256; see also *Fox v. Eagle Distributing Co.* (C.A.6, 2007), 510 F.3d 587, 591-592. Therefore, given that plaintiff's EEO complaint complains only of demeaning and harassing conduct experienced by both men and women, plaintiff's submission of the complaint does not constitute a protected activity. Accordingly, plaintiff's claim of retaliation is without merit.

**DISPARATE TREATMENT**

**{¶26}** Absent direct evidence of discriminatory intent, Ohio courts resolve claims of disparate treatment using the evidentiary framework established by the Supreme Court of the United States in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792. See *Canady v. Rekau & Rekau, Inc.*, Franklin App. No. 09AP-32, 2009-Ohio-4974, ¶22. "Under the *McDonnell Douglas* framework, a plaintiff bears the initial burden of establishing a prima facie case of discrimination. In order to do so, the plaintiff must present evidence that: (1) [she] is a member of a protected class, (2) [she] suffered an adverse employment action, (3) [she] was qualified for the position in question, and (4) either [she] was replaced by someone outside the protected class or a non-protected similarly situated person was treated better." Id. at ¶23.

**{¶27}** Plaintiff testified that she was required to work double shifts more often than male JCOs, but she acknowledged that the JCOs with whom she compared herself were "people with seniority." Indeed, according to both Sizemore and Horner, the

assignment of double shifts was based entirely upon seniority, excluding any staff who volunteered for such assignments.

{¶28} Under Ohio law, probationary employees are not similarly situated to their non-probationary co-workers. *Mowery*, supra, at ¶46. Plaintiff failed to present evidence to establish that any similarly situated, probationary, male JCO was treated better than her with respect to any alleged disparate treatment. Therefore, plaintiff failed to prove her claim of disparate treatment discrimination.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

{¶29} To state a cause of action for intentional infliction of emotional distress, plaintiff must show that: "(1) defendant intended to cause emotional distress, or knew or should have known that actions taken would result in serious emotional distress; (2) defendant's conduct was extreme and outrageous; (3) defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious." *Hanly v. Riverside Methodist Hosp.* (1991), 78 Ohio App.3d 73, 82.

{¶30} In *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 374, quoting Restatement of the Law 2d, Torts (1965) 73, Section 46, comment d, the court explained that liability in such cases "'has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"'"

{¶31} The weight of the evidence does not establish that any actions by Klaiber or other employees of defendant were "utterly intolerable in a civilized community." Therefore, plaintiff has failed to prove her claim of intentional infliction of emotional distress.

{¶32}    For the foregoing reasons, the court finds that plaintiff failed to prove any of her claims by a preponderance of the evidence and, accordingly, judgment shall be rendered in favor of defendant.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JENNIFER PARSON

    Plaintiff

    v.

DEPARTMENT OF YOUTH SERVICES

    Defendant
    Case No. 2008-09970

Judge Alan C. Travis

JUDGMENT ENTRY

    **{¶33}**    This case was tried to the court on the issue of liability.  The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant.  Court costs are assessed against plaintiff.  The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

                                             _____

ALAN C. TRAVIS
Judge

cc:

Eric A. Walker                              James H. Banks
Jennifer A. Adair                           P.O. Box 40
Assistant Attorneys General                 Dublin, Ohio 43017
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

RCV/dms
Filed September 1, 2011
To S.C. reporter October 13, 2011