[Cite as *Adams v. S. Ohio Corr. Facility*, 2012-Ohio-6319.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

DANIEL S. ADAMS

    Plaintiff

    v.

SOUTHERN OHIO CORRECTIONAL FACILITY

    Defendant

Case No. 2010-05242

Judge Clark B. Weaver Sr.
Magistrate Holly True Shaver

## DECISION OF THE MAGISTRATE

{¶ 1} Plaintiff brought this action alleging employment discrimination, retaliation, civil conspiracy, intentional infliction of emotional distress, and defamation.[1] The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} Plaintiff began his employment with defendant, Southern Ohio Correctional Facility (SOCF), in March 1989 as a Corrections Officer (CO). Plaintiff received either average or above-average employment evaluations consistently through January 2002. Plaintiff's claims stem from an incident that occurred on March 31, 2002. On that date, two of his co-workers, COs Brian Cox and Kevin Adkins, assaulted plaintiff's stepson, Ryan Kilgour, a CO employed by Correctional Reception Center in Columbus. The assault occurred at Kilgour's residence during a party. Cox and Adkins arrived at the party uninvited, asked for Kilgour, and then Cox assaulted Kilgour while Adkins prevented others from coming to Kilgour's aid. According to Cox, the assault was in

retaliation for Kilgour having assaulted Cox's stepson, Justin Harrison, the previous week.  At the time of the assault, Cox was the union president at SOCF, and he was married to Carla Cox, a Correctional Program Coordinator who was also a union steward at SOCF.

{¶ 3} After learning of the assault on Kilgour, plaintiff drove to the house of his supervisor, Major Mark Wynn, to report what had happened.  Although the incident occurred outside of the institution, plaintiff believed that he was required to report it as a violation of institutional conduct, inasmuch as Cox and Adkins were both COs.  Wynn advised plaintiff to write an incident report during his next shift.  (Plaintiff's Exhibit M.)  When plaintiff reported for work the next day, he was advised that until further notice, he was to work in the command center, which was not his assigned post.  A few days later, plaintiff attended a meeting with Warden James Haviland, Deputy Warden David Newsome, and investigators.  At the meeting, plaintiff was advised to let prosecutors handle the criminal case against Cox and Adkins.

{¶ 4} On April 29, 2002, plaintiff was working in A-Building.  According to plaintiff, he was processing employees in and out of the institution for an awards ceremony when Cox entered A-Building with Newsome and Haviland.  Cox made an unprofessional and intimidating comment to plaintiff and brushed plaintiff's shoulder as he walked past him.  After the ceremony, Cox remained in A-Building and stared at plaintiff for approximately 20 minutes.  Plaintiff filed an incident report the following day. (Plaintiff's Exhibit P.)  Plaintiff was interviewed with regard to his allegations about the incident.

{¶ 5} On May 7, 2002, at the request of Newsome, Wynn gave both plaintiff and Cox a written direct order not to discuss the assault at work inasmuch as the entire incident was under investigation as of that date.  Both Cox and plaintiff were also

---

[1]On September 2, 2010, the court dismissed plaintiff's claims of retaliation in violation of R.C. 4113.52 (whistleblower statute), constitutional claims, and any claims premised upon alleged violations of

advised that any report of either of them having any such discussions would result in immediate disciplinary action.  (Plaintiff's Exhibit L.)

**{¶ 6}** On that same date, plaintiff wrote an incident report expressing his dissatisfaction with the manner in which Newsome was handling the incident. Specifically, plaintiff questioned Newsome's decision to change his post assignment to the A-Building metal detector, which forced him to interact with Cox and Adkins, and plaintiff disagreed with Newsome's refusal to reinstate him to the Temporary Worker Level (TWL) position of sergeant.  According to plaintiff, Newsome advised him to tell his wife to stop "calling all over the state causing trouble."  (Plaintiff's Exhibit Q.)  Later the same day, plaintiff wrote a second incident report to document his concerns that Cox was going to remain the union president during the investigation.  Plaintiff also complained that various workplace policies were not being followed and that he was not being treated fairly. (Plaintiff's Exhibit R.)

**{¶ 7}** At Haviland's request, Carolyne Crockett-Harris, an employee of Pickaway Correctional Institution, was selected to conduct an investigation regarding the divisiveness that Cox and plaintiff were creating among staff in the institution.  Over a five-day period in May 2002, Crockett-Harris interviewed multiple SOCF employees, including plaintiff, Cox, and Carla Cox.  Crockett-Harris testified that when she interviewed plaintiff, she found him to be agitated, angry, and frustrated.  She noted that plaintiff refused to stop talking about the assault at work despite a direct order from his superiors because he needed to "vent."  Crockett-Harris recommended that a mediation be held with Cox, plaintiff, and a neutral party.

**{¶ 8}** On May 28, 2002, plaintiff met with Newsome and Haviland.  When they requested that plaintiff meet with Cox to see if they could move past the assault issue, plaintiff refused and Haviland used profanity toward plaintiff, in the presence of other employees.

---

a collective bargaining agreement.

{¶ 9} In both June and September 2002, plaintiff was not selected for promotion. In July 2002, plaintiff was "written up" for a use of force incident; on October 10, 2002, plaintiff was disciplined for talking to coworkers.

{¶ 10} On October 20, 2002, Carla Cox filed a complaint about plaintiff's behavior toward her. Carla Cox testified that after the assault, plaintiff stated to coworkers at the control center: "They're going down. Seven to 15 years," referring to Cox and Adkins. On October 21, 2002, plaintiff was reassigned to work in a surveillance tower and was ordered to stay away from Carla Cox. On October 24, 2002, plaintiff filed an incident report wherein he complained that Haviland had used profanity toward him in the May 28, 2002 meeting and that since the meeting, plaintiff had been harassed in that he was "written up" several times, not selected for promotion, and reassigned to the tower based upon false allegations by Carla Cox.

{¶ 11} On November 14, 2002, Brian Cox was placed on administrative leave for an unrelated incident and did not return to the institution.

{¶ 12} On December 9, 2002, plaintiff was involved in a car accident and did not return to work until February 2003. Upon his return, Carla Cox filed another complaint about him and he was assigned to the tower again. On February 27, 2003, a committee concluded that Carla Cox's allegations regarding plaintiff's behavior toward her were of a personal nature and did not constitute an Equal Employment Opportunity (EEO) violation. (Plaintiff's Exhibit Y.)

{¶ 13} On April 17, 2003, plaintiff wrote an incident report wherein he requested to be returned to his bid job. (Plaintiff's Exhibit U.) Plaintiff also filed a grievance with the union regarding management's decision to remove him from his assigned post and reassign him to the tower. (Defendant's Exhibit 1.)

{¶ 14} On January 2, 2004, Lieutenant Charlie Rogers conducted an employment evaluation of plaintiff and rated him as "above target" for all categories. Before that evaluation was approved, it was returned to Rogers at Newsome's request and all of the

"above targets" were changed to "meets targets."  Newsome testified that he directed that the evaluation be changed because plaintiff had received two or three corrective counselings after the assault.  According to Newsome, plaintiff was a "different guy" after the assault: his attitude was poor, and he was "consumed" by the incident.

{¶ 15} On February 25, 2004, plaintiff filed another incident report wherein he requested to be returned to his bid job.  (Plaintiff's Exhibit W.)  Plaintiff left defendant's employment on disability retirement in 2004.

{¶ 16} As a preliminary matter, the court finds that plaintiff's claims regarding his placement in the tower, his failure to be returned to his bid job, and his failure to be reinstated to his TWL position all arise from alleged violations of a collective bargaining agreement.  As the court noted in its September 2, 2010 entry of partial dismissal, this court lacks jurisdiction over any claims premised upon violations of a collective bargaining agreement.  *Moore v. Youngstown State University*, 63 Ohio App.3d 238 (1989).  Therefore, the court shall not further address those claims.

## I.  EMPLOYMENT DISCRIMINATION

{¶ 17} R.C. 4112.02 provides, in pertinent part, that:  "It shall be an unlawful discriminatory practice:  (A) For any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

{¶ 18} In Ohio, "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112."  *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196 (1981).  Absent direct evidence of discriminatory intent, Ohio courts resolve claims of disparate treatment using the evidentiary framework established by the Supreme Court of the

United States in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Canady v. Rekau & Rekau, Inc.*, 10th Dist. No. 09AP-32, 2009-Ohio-4974, ¶ 22. "Under the *McDonnell Douglas* framework, a plaintiff bears the initial burden of establishing a prima facie case of discrimination. In order to do so, the plaintiff must present evidence that: (1) he is a member of a protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position in question, and (4) either he was replaced by someone outside the protected class or a non-protected similarly situated person was treated better." *Id.* at ¶ 23.

{¶ 19} Plaintiff testified that he was not selected for promotion on two occasions and that he was treated less favorably than Cox was because of Cox's status as union president. However, plaintiff has not established that he was a member of any protected class as set forth in R.C. 4112.02. Accordingly, the court finds that plaintiff has failed to state a prima facie claim of disparate treatment employment discrimination.

{¶ 20} Plaintiff testified that he was harassed during his employment at SOCF and that he endured a hostile work environment. A hostile work environment is defined as one in which "*discriminatory* intimidation, ridicule, and insult," permeate the workplace. The working conditions must be such that they are "sufficiently severe or pervasive" to create "an abusive working environment." (Emphasis added.) *Harris v. Forklift Systems Inc.,* 510 U.S. 17, 21 (1993), quoting *Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 67 (1986). As suggested by the definition, a hostile work environment claim is necessarily premised upon some form of prohibited discrimination. Although plaintiff testified that he felt that he was subjected to a hostile work environment, he has failed to prove that he endured intimidation, ridicule, or insult that was based upon any protected trait; i.e., his race, sex, age, etc. Accordingly, the court finds that plaintiff has failed to state a prima facie claim of harassment based upon a hostile work environment.

## II. RETALIATION

{¶ 21} To establish a prima facie case of unlawful retaliation under Ohio law, the employee must establish: 1) that he engaged in a protected activity; 2) that he was the subject of an adverse employment action; and 3) that a causal link exists between the protected activity and the adverse action. *Mowery v. Columbus*, 10th Dist. No. 05AP-266, 2006-Ohio-1153, ¶ 21. For purposes of a retaliation claim, opposition to "demeaning and harassing conduct," without complaining of illegal discrimination or taking a stand against such discrimination, does not constitute a protected activity. *Murray v. Sears*, N.D.Ohio No. 1:09 CV 702, 2010 U.S. Dist. LEXIS 34256 (April 7, 2010); *see also Fox v. Eagle Distributing Co.*, 510 F.3d 587, 591-592 (6th Cir.2007).

{¶ 22} Plaintiff filed numerous incident reports complaining of his dissatisfaction with the decisions of management and his feelings that he was being treated unfairly; however, plaintiff never complained that his treatment was based upon any unlawful employment practice under either Title VII or R.C. 4112.02. "When a grievance or other activity does not allege discrimination, it does not constitute either protected activity or protected opposition." *Motley v. Ohio Civil Rights Comm.*, 10th Dist. No. 07AP-923, 2008-Ohio-2306, 2008 Ohio App. LEXIS 1958, ¶ 15, quoting *Jones v. United Parcel Service, Inc.*, 411 F. Supp.2d 1236, 1258-1259 (2006). Therefore, the court finds that plaintiff did not engage in a protected activity that gives rise to a claim for retaliation. Accordingly, the court finds that plaintiff has failed to state a prima facie claim of retaliation.

## III. CIVIL CONSPIRACY

{¶ 23} "'Civil conspiracy' has been defined as 'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'" *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio

St.3d 415, 419, 1995-Ohio-61, quoting *LeFort v. Century 21-Maitland Realty Co.*, 32 Ohio St.3d 121, 126 (1987). "An underlying unlawful act is required before a civil conspiracy claim can succeed." *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475, 1998-Ohio-294.

{¶ 24} With regard to his claim of civil conspiracy, plaintiff testified that he felt as though he could not trust anyone at work after the assault, and that Haviland, Newsome, Al Lewis (an investigator), Adkins, and Cox all conspired against him.

{¶ 25} The court finds that plaintiff has failed to demonstrate any unlawful act sufficient to support a civil conspiracy claim. Although plaintiff disagreed with how certain employment decisions were made, his dissatisfaction does not support a claim for civil conspiracy. Accordingly, the court finds that plaintiff has failed to state a prima facie claim of civil conspiracy.

## IV. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

{¶ 26} To state a cause of action for intentional infliction of emotional distress, plaintiff must show that: "(1) defendant intended to cause emotional distress, or knew or should have known that actions taken would result in serious emotional distress; (2) defendant's conduct was extreme and outrageous; (3) defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious." *Hanly v. Riverside Methodist Hosp.*, 78 Ohio App.3d 73, 82 (1991).

{¶ 27} In *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374 (1983), quoting Restatement of the Law 2d, Torts 73, Section 46, Comment d (1965), the court explained that liability in such cases "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average

member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"

{¶ 28} The weight of the evidence does not establish that any actions by Cox, Carla Cox, or other employees of defendant were "utterly intolerable in a civilized community." Accordingly, the court finds that plaintiff has failed to state a prima facie claim of intentional infliction of emotional distress.

## V.  DEFAMATION

{¶ 29} "Defamation is defined as the unprivileged publication of a false and defamatory matter about another * * * which tends to cause injury to a person's reputation or exposes him to public hatred, contempt, ridicule, shame or disgrace * * *." *McCartney v. Oblates of St. Francis deSales*, 80 Ohio App.3d 345, 353 (6th Dist.1992). "As suggested by the definition, a publication of statements, even where they may be false and defamatory, does not rise to the level of actionable defamation unless the publication is also unprivileged.  Thus, the threshold issue in such cases is whether the statements at issue were privileged or unprivileged publications." *Sullivan v. Ohio Dept. of Rehab. & Corr.*, Ct. of Cl. No. 2003-02161, 2005-Ohio-2122, ¶ 8.

{¶ 30} Privileged statements are those that are "made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest.  The essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only."  *Hahn v. Kotten*, 43 Ohio St.2d 237, 244 (1975), quoting 50 American Jurisprudence 2d, Libel and Slander, Section 195 at 698.

{¶ 31} Furthermore, a qualified privilege can be defeated only by clear and convincing evidence of actual malice.  *Bartlett v. Daniel Drake Mem. Hosp.*, 75 Ohio

App.3d 334, 340 (1st Dist.1991).  "Actual malice" is "acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Jacobs v. Frank*, 60 Ohio St.3d. 111, 116 (1991).

{¶ 32} Plaintiff testified that Carla Cox made baseless allegations against him in October 2002 and February 2003.  Plaintiff's Exhibit I is the charge of discrimination that Carla Cox made with regard to plaintiff, wherein she complains of verbal intimidation and of being followed by plaintiff.  The court finds that Carla Cox's testimony was credible regarding statements that plaintiff allegedly made to her after the assault.  Indeed, the greater weight of the evidence shows that plaintiff continued to talk about the assault after he was directed not to by his superiors.  Based upon the testimony and evidence presented at trial, the court finds that Carla Cox's allegations are subject to a qualified privilege.  Moreover, plaintiff has failed to prove that Carla Cox's statements were made with actual malice.  Accordingly, the court finds that plaintiff has failed to state a prima facie claim of defamation.

{¶ 33} In sum, the court finds that plaintiff has failed to prove any of his claims by a preponderance of the evidence, and judgment is recommended in favor of defendant.[2]

{¶ 34} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i).  If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed.  A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
HOLLY TRUE SHAVER
Magistrate

cc:

Amy S. Brown                            Casey L. Chapman
Eric A. Walker                          Assistant Attorney General
Assistant Attorneys General             Environmental Enforcement Section
150 East Gay Street, 18th Floor         30 East Broad Street, 25th Floor
Columbus, Ohio 43215-3130               Columbus, Ohio 43215

James H. Banks
P.O. Box 40
Dublin, Ohio 43017

002
Filed July 9, 2012
To S.C. Reporter January 16, 2013

---

[2]At the close of plaintiff's case, defendant moved for a dismissal pursuant to Civ.R. 41(B)(2), on the ground that upon the facts and the law, plaintiff had shown no right to relief. The court took the motion under advisement. In light of the foregoing decision, defendant's motion is DENIED as moot.