NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0108n.06

No. 16-2142

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

<table>
<tr><td>SUSAN MUMM,</td><td>)</td><td rowspan="10"><strong>FILED</strong><br>Mar 02, 2018<br>DEBORAH S. HUNT, Clerk<br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td style="padding-left:2em">Plaintiff-Appellant,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>CHARTER TOWNSHIP OF SUPERIOR,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td style="padding-left:2em">Defendant-Appellee.</td><td>)</td></tr>
</table>

BEFORE: NORRIS, GIBBONS, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. After an unrelated dispute over a one-day suspension, Susan Mumm told her bosses at the Township of Superior that she was tired of being paid less than a male coworker and threatened to sue if she didn't get a raise. This ultimatum was the "last straw" for Mumm's supervisors, who immediately suspended her and began the process of terminating her. The district court granted summary judgment to the Township on Mumm's retaliation claim because she did not clearly allege that the pay discrepancy resulted from sex discrimination and could not show that the Township's non-retaliatory reasons for firing her were pretexts. Because a reasonable jury could disagree on both counts, we reverse and remand for trial.

Mumm worked for the Township in several capacities: as an accountant, a human resources administrator, and an information technology administrator. On February 14, 2014, she received a verbal and written reprimand and was suspended for one day without pay for

making too many deposits into Township employees' health savings accounts during a single calendar year and for neglecting her IT responsibilities. Mumm filed a complaint with the Township disagreeing with the discipline and explaining that her mistake resulted from "inexperience" with health savings accounts and the "huge amount" of additional duties she had taken on. R. 23-3 at 15. On February 19, three Township officials—Supervisor Ken Schwartz, Clerk David Phillips, and Treasurer Brenda McKinney—met with Mumm to discuss her complaint. They agreed to transfer Mumm's health savings account duties and one of her IT responsibilities to other employees, without decreasing her pay. Schwartz proposed that Mumm withdraw her complaint and that they "move on from this." R. 26-2 at 32.

Mumm requested another meeting with Schwartz, Phillips, and McKinney for February 21 to discuss Schwartz's request that she withdraw her complaint. At that meeting, Mumm complained about a pattern of mistreatment and informed the officials that she would withdraw the complaint only if the Township granted her an immediate pay increase of $10,000 because she was "tired of being underpaid for all these years in relation to Keith Lockie." R. 23-6 at 31. Lockie was a Township employee who, like Mumm, worked as an accountant in addition to other duties. When the Township officials did not acquiesce, Mumm proposed, as an alternative resolution, that she resign with one year's severance pay. Mumm then informed the officials that she had consulted with a labor attorney and that she intended to file a lawsuit "about this." *Id.* at 33. Schwartz says that Mumm was "belligeren[t]" and used an "extreme tone of voice" during the meeting, threatening that her lawsuit would "shred" their reputations, but Mumm claims she spoke calmly and that *McKinney* screamed at her without provocation. R. 23-3 at 5, 13, 18; R. 23-6 at 33.

After the meeting, Schwartz, Phillips, and McKinney met privately and agreed they could no longer work with Mumm or trust her. Schwartz told the others he wanted to fire Mumm. That same day, the Township suspended Mumm with pay and began the process of terminating her employment. The Board of Trustees fired Mumm on April 3, 2014.

Mumm filed a civil rights complaint alleging violations of the Equal Pay Act, 29 U.S.C. § 206(d), Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, and the Elliot Larsen Civil Rights Act, Mich. Comp. Laws § 37.2701. Mumm claimed that the Township paid her less than Lockie for substantially similar work because of her sex and retaliated when she complained about the alleged sex discrimination by firing her. The parties filed competing motions for summary judgment, and the district court granted summary judgment in favor of the Township. On appeal, Mumm challenges only the district court's denial of her federal and Michigan retaliation claims.

*Title VII*. Employers may not retaliate against employees who "ha[ve] opposed any . . . unlawful employment practice." 42 U.S.C. § 2000e-3(a). Where there is no direct evidence of a retaliatory motive, as is the case here, we apply a three-step burden-shifting analysis. If the plaintiff makes out a threshold case, the burden of production shifts to the employer to articulate a legitimate, non-retaliatory reason for its actions. If the employer carries its burden, the plaintiff must then prove that the reasons offered by the employer were a pretext for retaliation. *See Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008).

To establish a threshold claim of retaliation, the plaintiff must show: "(1) [she] engaged in activity protected by Title VII; (2) the exercise of [her] civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment

action." *Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 412 (6th Cir. 1999). The Township disputes whether Mumm's threat to sue qualified as protected activity and whether Mumm can show pretext.

A plaintiff's objection to an employment practice is protected activity if her supervisors "should have reasonably understood that [she] was making a complaint of sex discrimination." *Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 512 (6th Cir. 2016). That means a complaint must allege unlawful discrimination rather than general unfairness. And while a complaint need not be "lodged with absolute formality, clarity, or precision," *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 645 (6th Cir. 2015), "a vague charge of discrimination . . . is insufficient to constitute opposition to an unlawful employment practice," *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1312–13 (6th Cir. 1989).

A jury could find that Mumm's threat to sue over the pay disparity was clear enough to qualify as protected activity. Mumm claims she told the Township officials that she "should have been paid as much as Keith Lockie" and would sue if the Township did not rectify "the pay discrimination between Keith and [me]." R. 23-6 at 31–33. Mumm admits that she did not use the phrase "sex discrimination" or otherwise make explicit that she believed gender explained the pay disparity. But the officials knew that Lockie was male and, like Mumm, occupied a similar accounting position for the Township. And they knew that Mumm was an at-will, non-unionized employee, which meant that sex discrimination was the only viable basis for a lawsuit relating to the pay disparity between her and Lockie. Construing all facts and making all reasonable inferences in Mumm's favor, a jury could find that the officials should have known Mumm was charging the Township with sex discrimination.

Our decision in *Yazdian* supports this position. We reversed a grant of summary judgment to an employer when a plaintiff verbally accused a supervisor of creating a "hostile work environment" and threatened to bring a lawsuit, even though the plaintiff did not mention any specific form of discrimination during the conversation and had made only one off-hand reference to ethnic discrimination in the past. 793 F.3d at 641–43, 646.

Mumm's complaint was more precise than others found too vague in the past. In *Fox v. Eagle Distributing Co.*, the plaintiff threatened to sue, but he alleged only that management was "out to get him" and unfairly denied him a promotion. 510 F.3d 587, 592 (6th Cir. 2007). He did not mention the age discrimination claim he ultimately brought and did not point to a younger employee who received better treatment. In *Booker*, the plaintiff never threatened to sue and told management only that complaints about his work performance were examples of "ethnocism [sic]," with no further explanation. 879 F.2d at 1313. The court noted that Booker "was not contesting any unlawful employment practice; he was contesting the correctness of a decision made by his employer." *Id.* Here, Mumm pointed to a specific practice she believed to be unlawful (the pay disparity between her and Lockie) and threatened to sue if the Township did not correct it. It makes no difference that Mumm did not utter the magic words "sex discrimination." A jury could find that the basis for the threatened lawsuit should have been clear to the Township officials and thus that Mumm's complaint was protected activity.

Mumm has also created a triable issue of fact over whether the Township's proffered reason for firing her—that the officials "lost trust" in her after the meeting, which was the "last straw" in a series of inappropriate actions—was a pretext for retaliation. A plaintiff can demonstrate pretext by showing that the employer's stated reason for terminating the employee

(1) has no basis in fact, (2) was not the actual reason for termination, or (3) was insufficient to explain the employer's action. *Imwalle*, 515 F.3d at 531.

Mumm has put forward enough evidence for a jury to conclude that her conduct prior to the final meeting could not justify a firing. The Township emphasizes Schwartz's testimony that he wanted to fire Mumm the day he learned about the health savings account mishap, but Schwartz admits that Phillips and McKinney "talked [him] down" from that position. R. 26-3 at 9. Phillips and McKinney personally assured Mumm she would not be fired over the health savings account problem and Schwartz told Mumm two days before the final meeting that they could "move on" if she withdrew her complaint about the suspension. R. 23-32 at 4; R. 26-2 at 32.

A reasonable jury could also doubt that the Township fired Mumm because of her allegedly inappropriate behavior at the final meeting. The Township describes Mumm's conduct during the meeting as "shocking," noting Schwartz's testimony that Mumm acted "belligeren[tly]." Appellee's Br. 58. But Mumm disputes this characterization and claims she stated her requests in a calm voice, even after McKinney screamed at her.

All told, the record at this stage of the case does not show that Mumm behaved inappropriately at the meeting. A jury could agree with Mumm that the true reason for her termination was her threat to sue the Township, not the manner in which she delivered it.

*Michigan Law.* Our Title VII analysis applies equally to Mumm's retaliation claim under Michigan civil rights law. Michigan courts use the federal Title VII framework to assess retaliation claims. *See Garg v. Macomb Cty. Cmty. Mental Health Servs.*, 696 N.W.2d 646, 653 (Mich. 2005); *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 520–21 (Mich. 2001).

For these reasons, we reverse and remand for trial.