RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0115p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
─────────────────

DOUGLAS MILCZAK,

               *Plaintiff-Appellant*,

   *v.*

GENERAL MOTORS, LLC,

               *Defendant-Appellee*.

> No. 23-1462

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:21-cv-11484—George Caram Steeh III, District Judge.

Argued: January 31, 2024

Decided and Filed: May 21, 2024

Before: SILER, MATHIS, and BLOOMEKATZ, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ARGUED:** Eric I. Frankie, Detroit, Michigan, for Appellant. Donald C. Bulea, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PLLC, Birmingham, Michigan, for Appellee. Amos Blackman, UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae. **ON BRIEF:** Eric I. Frankie, Detroit, Michigan, for Appellant. Donald C. Bulea, Mami Kato, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PLLC, Birmingham, Michigan, for Appellee. Tara Patel, UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae.

─────────────────

## OPINION

─────────────────

BLOOMEKATZ, Circuit Judge. Douglas Milczak is a longtime General Motors ("GM") employee who works at one of its plants near Detroit, Michigan. In 2018, GM announced that it

was retooling that plant to produce electric vehicles. From then on things seemed tenuous for Milczak, who was in his late fifties. While he remained employed, and still is, he claims that his managers harassed him because of his age, and let his subordinates do the same, to push him into early retirement. After several years of enduring this alleged degradation, he filed an action against GM claiming it violated the Age Discrimination in Employment Act. After discovery, GM moved for summary judgment, arguing the record did not support any of his claims. The district court granted the motion, and we affirm.

## BACKGROUND[1]

Douglas Milczak has worked as an engineer at GM for almost thirty years. In November 2018, GM announced its plan to retool some of its plants to produce electric vehicles or shut them down altogether. This included the plant where Milczak works—Detroit-Hamtramck (DHAM). To scale down employee operations, GM announced that anyone hired before 2007 was eligible for voluntary severance. Milczak qualified but declined. After that, GM started layoffs. Milczak's job was spared for the time being, but he would still have to find another position before operations were phased out. He did not want to apply to jobs at plants farther away, so he continued to work at DHAM while hoping GM would eventually place him in a new, permanent role.

Now in his early sixties, Milczak claims that he was often on the receiving end of ugly and untoward conduct on account of his age by managers and subordinates alike. He also claims he was transferred between jobs repeatedly and unnecessarily on account of his age and was inadequately compensated. We first describe his allegations as to the managers, then the transfers, then the subordinates, and finally the compensation.

*Managers.* Milczak worked under several managers at DHAM, including Mike Lazaroff, Jim Donlin, Sean Tackett, Jason McKelvey, Brent Cuthbert, Guy Mitchell, Jason Roussell, and Damon Ferraiuolo. He claims that Lazaroff often referred to him as "my bitch" or "motherfucker," and, starting in 2018, "old fart" and "old motherfucker." Milczak Dep. Excerpt,

---

[1]Because we review a grant of summary judgment, we recite the facts in the light most favorable to Milczak. *Palma v. Johns*, 27 F.4th 419, 423 (6th Cir. 2022).

R. 26-2, PageID 145, 148.  In Spring 2018, Milczak, seeking a raise, presented a summary of his contributions to Roussell, who told him that he was making too much money already and that "knowledge [did] not matter."  Milczak Dep. Excerpt, R. 40-2, PageID 581–82.  Milczak interpreted this as an ageist comment because knowledge comes with age.

In 2019, Donlin, Tackett, and McKelvey met with Milczak to complain about his allegedly chronic absenteeism.  Milczak does not deny he often missed work, blaming unpredictable headaches, debilitating stress, and safety concerns about working in the body shop by himself.  But he believed the admonishment was unwarranted because GM does not have a formal attendance policy.  At the same meeting, Milczak formally reported Lazaroff's age-based comments and hoped that Donlin would address them.

In 2021, disappointed with Milczak's performance, Cuthbert wrote two negative performance reviews and directed him to begin tracking his daily activities.  Milczak found this odd considering he received positive feedback from Cuthbert earlier that same year.  Milczak also claims that Mitchell told him that GM was "getting rid of the older guys," a sentiment Ferraiuolo also shared with him.  Milczak Dep., R. 40-3, PageID 625.  Milczak understood these remarks as a threat that GM would try to push him out as well.

*Transfers.*  In the wake of the retooling announcement, GM transferred Milczak twice to fill what it says were staffing shortages.  Milczak believes that both transfers were attempts to push him out because of his age.  About a year after the announcement, GM transferred Milczak to DHAM's General Assembly group to manage a team of skilled trade employees.  Milczak did not want to oversee the trade employees, whom he believed were difficult to work with.  Six months later, GM transferred him to the Body Shop at the same plant.  Milczak argues that he was transferred because the company found a younger employee to replace him.  From August 2019 to January 2020, McKelvey assigned Milczak the second shift at the Body Shop, which ran from 2:00 p.m. to 10:30 p.m.  Milczak hated this shift.  He complained that it was lonely, limited his ability to spend time with his wife, took away his opportunity to earn overtime pay, and prevented him from being able to employ his production expertise.  But the shift eventually ended, and Milczak began his current position as senior manufacturing engineer with the General Assembly and Body Shop group.

*Subordinates.* Milczak testified that the skilled trade employees whom he oversaw also harassed him. In May 2019, Milczak found an image in a common area depicting a dead mouse in a trap being sexually assaulted by other mice. Someone had written Milczak's name on the dead mouse and labeled the aggressor mice as the "millwrights," "electricians," "toolmaker," and "pipefitter" skilled trades. Mousetrap Image, R. 26-5, PageID 226. The caption of the image read, "when you're down and out everyone wants to screw you." *Id.* Milczak reported the image to HR but did not complain that it constituted age-based harassment. HR then conducted an investigation. While it interviewed more than fifteen trade workers and checked printer logs, HR did not uncover who drew the image. It did, however, require all employees to attend a 30-minute anti-harassment training. Over a year later, Milczak found a picture of a long-haired man with his eyes poked out at his desk. And two weeks after that, he found a CD with a handwritten label titled "Michael Jackson Number Ones" underneath his papers in the same location. Milczak Dep., R. 26-2, PageID 178–79. Milczak did not report either the second image or the CD to HR or a manager. He alleges that all three incidents targeted his age because, in his view, both the mouse and decapitated man appeared to be old, and the CD featured music from a 1980s popstar.

*Compensation.* Though his salary increased and his benefits remained the same after the retooling announcement, Milczak claims GM did not give him an adequate bonus and his annual raise was not commensurate with his performance. According to undisputed compensation notices, he received 100% of his eligible bonus and annual raises (ranging from 2.5 to 3% increases) in 2019, 2020, and 2021. However, Milczak testified that employees can make over 100% of what GM treats as the eligible bonus, which he was more than qualified for, and that the 2.5% raises he received were the lowest of his career. Milczak also heard of younger employees that received better job opportunities, bonuses, and increases.

In addition to the annual bonus, Milczak testified that GM deviated from its policy by not providing him with an adequate reward—of $25,000—for his cost-cutting ideas that exceeded his job duties. Milczak acknowledges that he submitted at least one of his ideas for consideration under this award policy after the required deadline but argues that GM should have made an exception given the efficacy of the idea. He also claims that the cost-cutting

suggestions he submitted were not part of his job duties and that GM undervalued the amount he saved the company.

With these allegations, Milczak sued GM alleging age discrimination in violation of the Age Discrimination in Employment Act (ADEA). He brought three claims: (1) hostile work environment, (2) disparate treatment, and (3) retaliation. After discovery, GM moved for summary judgment, which the district court granted. The court held that Milczak had not exhausted his hostile work environment claim with the Equal Employment Opportunity Commission (EEOC) and that, even if he had, that claim would fail on the merits. The court further determined that Milczak could not make a prima facie case of disparate treatment or retaliation. Milczak now appeals.

## ANALYSIS

### I. Preliminary Issues

Before reviewing the merits of Milczak's ADEA claims, we must address two preliminary issues. First, Milczak challenges the district court's decision to exclude two pieces of evidence in its assessment of his claims. Second, Milczak challenges the district court's conclusion that he failed to exhaust his hostile work environment claim before the EEOC. While we affirm the district court's evidentiary decision, we disagree on exhaustion, and therefore proceed to the merits of all three ADEA claims on the same evidentiary record the district court considered.

#### A. Exclusion of Milczak's Evidence

Before the district court evaluated Milczak's claims, it excluded two pieces of evidence: (1) a purported declaration attached as Exhibit C to Milczak's response to GM's summary judgment motion, and (2) a written "Summary of Events," which Milczak's attorney introduced as Exhibit A during Milczak's deposition. We review these exclusions for abuse of discretion. *Rush v. Ill. Cent. R.R. Co.*, 399 F.3d 705, 715 (6th Cir. 2005).

Federal Rule of Civil Procedure 56(c)(1)(A) requires parties to cite to "particular parts of materials in the record" at summary judgment, including depositions, affidavits, and other

evidence. While Milczak may submit a declaration in lieu of a sworn affidavit, the declaration must comply with 28 U.S.C. § 1746. Under that statute, Milczak must, at the very least, (1) sign the declaration, (2) declare its contents as true, (3) swear under the penalty of perjury, and (4) provide a date. *Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1994). Because Milczak did not attest to its truth under penalty of perjury, the declaration does not substantially comply with § 1746. *Id.* The same is true of the Summary of Events, which was not part of Milczak's deposition testimony. And while he stated that the Summary "[was] true and accurate, to the best of [his] knowledge and belief," it was not signed, dated, and sworn to under the penalty of perjury. Milczak Dep. 40-3, PageID 652. The district court did not abuse its discretion in excluding these two documents, and therefore we will not consider their contents on appeal.

**B. Exhaustion of Administrative Remedies**

The next preliminary question is whether Milczak exhausted his hostile environment claim with the EEOC. We hold that he has. Because employees often file EEOC charges pro se (as Milczak did here), we construe them liberally in favor of the employee when evaluating exhaustion. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 731–32 (6th Cir. 2006). And we consider this claim sufficiently exhausted if the statements in Milczak's charge put the EEOC "on notice" that he may have suffered an age-based hostile environment, such that the agency can investigate that claim if it so chooses. *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68 (1984).

Reviewing the charge, we conclude that Milczak has exhausted this claim. Milczak's EEOC charge alleged that he was subject to "harassment" as recently as November 18, 2019 "due to [his] age and in retaliation for engaging in a protected activity." EEOC Charge, R. 26-15, PageID 351. He also pointed to the drawing of the mouse in the trap, profane language directed at him that referenced his age, his transfers, loss of overtime opportunities, lack of adequate bonus, and management's failure to address his complaints. Notably, the EEOC, as amicus, confirms that it considers Milczak's charge sufficient to put it on notice of a hostile environment claim. Since the charge contained information sufficient to put the EEOC on notice of his harassment claim, we conclude that this claim is exhausted.

The district court concluded that Milczak had not adequately exhausted his claim because the EEOC charge mentioned only one discrete, age-explicit discriminatory act—when Lazaroff called him "old." Op. & Order, R. 42, PageID 763. It analogized to *Younis v. Pinnacle Airlines, Inc.*, where we held that a plaintiff had not exhausted his hostile work environment claim because he alleged only three or four isolated comments over a three-year period and did not allege that the conduct unreasonably interfered with his work performance or created an objectively hostile environment. 610 F.3d 359, 362–63 (6th Cir. 2010). But *Younis* is inapplicable here. We underscore that charges are not lawsuits and neither Milczak nor any other complainant needs to demonstrate each element of the hostile work environment claim to exhaust it. *See Davis v. Sodexho*, 157 F.3d 460, 463–64 (6th Cir. 1998). What's more, unlike in *Younis*, Milczak did not describe several "isolated" incidents, but several incidents that, together, created an environment of harassment. *Younis*, 610 F.3d at 362. Indeed, the charge explicitly complained of "harassment," and complained generally about how Milczak's supervisors and subordinates continuously treated him due to his age. EEOC Charge at PageID 351. He has more than satisfied this burden. *See Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 467–68 (6th Cir. 2009) (holding that the term "harassment" refers to a broader category of claims that includes both hostile work environment and quid pro quo causes of action).

## II. ADEA Claims

With these preliminary questions resolved, we move to the merits. We review a grant of summary judgment de novo. *See E.E.O.C. v. Univ. of Detroit*, 904 F.2d 331, 334 (6th Cir. 1990). Summary judgment is appropriate where the record shows there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). We construe the evidence in the light most favorable to Milczak, the party opposing summary judgment. *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 332 n.2 (1990). GM has the initial burden of showing the absence of a genuine issue of material fact, and if satisfied, Milczak must set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To do so, Milczak must adduce more than "a scintilla" of evidence, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986);

it is not sufficient for the nonmoving party merely to "show that there is some metaphysical doubt as to the material facts," *Matsushita Elec.*, 475 U.S. at 586.

### A. Hostile Work Environment

The ADEA recognizes a claim for discrimination based on a hostile work environment theory if the plaintiff's "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999) (internal quotation marks omitted). This is a "relatively high bar." *Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017). Milczak must demonstrate that: (1) he is more than forty years old; (2) he "was subjected to harassment, either through words or actions, based on age"; (3) "[t]he harassment had the effect of unreasonably interfering" with his work performance and created "an objectively intimidating, hostile, or offensive work environment"; and (4) there is some basis for holding the employer liable. *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834–35 (6th Cir. 1996); *Snyder v. Pierre's French Ice Cream Co.*, 589 F. App'x 767, 773 (6th Cir. 2014). The first prong is undisputed, so we turn to the second and third prongs and consider whether he faced age-related harassment that was severe or pervasive.

Milczak points to three categories of conduct that he considers age-based harassment relevant to the second prong: (1) his managers' offensive comments, (2) GM's various personnel actions, including transfers and evaluations, and (3) the trade workers' disparaging images. Given the age-explicit comments by Milczak's manager ("old fart" and "old motherfucker"), the second prong is easily satisfied. Yet we still consider his other allegations and evaluate whether they constitute harassment based on age so that we can assess whether the totality of the age-based harassment was severe and pervasive as required by the next prong. *Williams*, 187 F.3d at 562.

*Managers' Comments*. Lazaroff routinely referenced Milczak as "my bitch" and "motherfucker." Milczak estimates that Lazaroff hurled such insults approximately twenty times each. Of these, only three explicitly referenced age. It may be that a few age-based comments could, based on the context, demonstrate that all of a harasser's demeaning comments were due

to the plaintiff's protected characteristics.  On this record, however, we cannot conclude that the three age-explicit comments transform the entirety of Lazaroff's remarks over a three-year period into age-based harassment.  The context demonstrates that Lazaroff generally utilized unpleasant and foul language.  And Milczak does not provide evidence from which a reasonable jury could conclude that this generalized harassment was attributable to age-based hostility against him.   Indeed, the vast majority of the non-age-explicit comments precede those referencing age.  The same is true of the one time Milczak recounts a manager telling him that experience (which could be a proxy for age) "does not matter" in the context of rejecting his raise request.  That comment is too vague, particularly in context, to amount to age-based harassment.  *See Brown v. Metro. Gov't of Nashville & Davidson Cnty.*, 722 F. App'x 520, 525 (6th Cir. 2018).  Accordingly, beyond the three age-explicit comments, we do not view all of Lazaroff's comments as part of an age-based hostile work environment.

*Personnel actions*. Beyond offensive comments, Milczak cites to other management actions that he claims were motivated by his age.  This includes the request that Milczak produce a summary of his contributions to DHAM, his reassignment to General Assembly maintenance without adequate training, his reassignment to the much later second shift that deprived him of overtime opportunities, the memo he received from his supervisors complaining about his attendance, his negative performance reviews, and demands by his supervisor to improve his performance.

Does any of this constitute *age-based* harassment?  Milczak again points to Lazaroff's three age-explicit comments and his self-serving testimony that Mitchell told him that GM was getting rid of older guys.  But Milczak does not allege that Lazaroff was involved in any of these alleged personnel actions.  And Milczak's vague self-serving testimony that the company was "getting rid of older guys," in the context of the whole record does not lead to a reasonable inference that the transfers were initiated because of age.  *See Williams*, 187 F.3d at 562–63.

On this point, GM first argues that personnel actions are categorically excluded from our hostile environment analysis, citing *Shrivastava v. RBS Citizens Bank, N.A.*, 227 F. Supp. 3d 824, 847 (E.D. Mich. 2017).  We disagree.  In *Shrivastava*, the court reasoned that an employer providing increased opportunities to younger coworkers "discriminatory or not" does not

"invoke the kind of acute intimidation, ridicule, abuse, or insult contemplated by a hostile work environment claim." *Id*. The district court extended *Shrivastava*'s reasoning to the personnel actions alleged in Milczak's suit. But a hostile work environment claim addresses "the practice of creating a working environment heavily charged with" discrimination on the basis of protected characteristics. *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 66–67 (1986) (internal quotation marks omitted). An employer could do that with constant harassing minor personnel actions. That's the argument here; Milczak contends that the transfers, unfounded poor reviews, and other disciplinary actions compose "a series of separate acts that collectively constitute one unlawful employment practice"—a hostile work environment. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (internal quotation marks omitted).

Nevertheless, the record here does not reasonably support Milczak's contention that GM's personnel actions were based on his age. Consider the transfers. There's no connection, direct or otherwise, between the age-based comments and the transfers themselves. *See Brown*, 722 F. App'x at 525. Bear in mind that the plant was scheduled to wind down operations and get retooled. Despite layoffs, Milczak kept his job. The record shows that GM transferred Milczak to fill staffing gaps resulting from the closure—not to ridicule him based on his age. The same goes for the evaluations and complaints about his attendance. The managers never mentioned Milczak's age during any of these conversations. Milczak even acknowledges that he did not regularly attend his shifts. Milczak relies on his own subjective belief that these personnel actions were taken because of his age. Under these circumstances, a reasonable juror could not credit his belief.

*Subordinates' Harassment*. The last category Milczak identifies as age-based harassment includes the actions of his subordinates, specifically, the unionized trade workers. Recall that Milczak argues that these employees contributed to the hostile environment by leaving him with an offensive and sexually violent mouse drawing, a picture of a human head with the eyes poked out, and a CD with several of Michael Jackson's top hits. There is no evidence that these events were tied to his age apart from Milczak's own suspicion. There is, of course, no requirement that each piece of evidence be explicitly tied to age. *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 708 (6th Cir. 2007). A hostile work environment "typically comprises a succession of harassing

acts, each of which may not be actionable on its own." *Id.* (internal quotation marks omitted). That said, there must be some evidence from which a juror can infer the harassment was on account of age. Milczak did not tie the mouse drawing to age when he reported it to HR, and his speculation regarding the second picture or the Michael Jackson CD—which were placed in a common area—is insufficient to create a triable question of age-based harassment.

Therefore, as we move to the third prong, we consider only the managers' three age-explicit comments, as this is the only harassment Milczak suffered that a reasonable jury could find was due to his age.

On the third step of the analysis, we consider whether the age-based harassment had the effect of unreasonably interfering with Milczak's work performance and creating an "objectively intimidating, hostile, or offensive work environment." *Crawford,* 96 F.3d at 834–35. For us to conclude there was a hostile work environment, the harassment must be "severe or pervasive." *Williams*, 187 F.3d at 560. Factors we look to include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." *Crawford*, 96 F.3d at 835 (quoting *Harris*, 510 U.S. at 23).

The age-based harassment Milczak endured was neither objectively severe nor pervasive. Though abhorrent, Lazaroff's three comments are more properly characterized as "mere offensive utterance[s]" and do not approximate the physically threatening or humiliating language required by caselaw. *Id.* at 836 (alteration in original) (internal quotation marks omitted). Furthermore, Milczak does not claim any of these actions made it difficult for him to do his job or explain how those actions created an atmosphere of age-based harassment that pervaded the workplace. Quite the opposite, Milczak boasts about his work performance and argues the bad evaluations he received lacked merit. At bottom, the allegations do not amount to the sort of "extreme" conduct required to prove these claims. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

**B. Disparate Treatment**

Because Milczak did not show that he was treated differently than younger employees, his disparate treatment claim fares no better. In evaluating an ADEA disparate treatment claim based on circumstantial evidence, we apply the *McDonnell-Douglas* burden-shifting framework. *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324–25 (6th Cir. 2021). Under *McDonnell-Douglas*, Milczak must first establish a prima facie case of age discrimination. *Id.* To establish a prima facie case of age discrimination, Milczak must show that (1) he is a member of a protected class (older than forty); (2) he suffered an adverse employment action; (3) he was qualified for the position held; and (4) that someone outside the protected class either replaced him or was similarly situated and treated more favorably. *Id.* at 326. If Milczak succeeds, the burden shifts to GM to identify a legitimate, nondiscriminatory reason for actions it took against Milczak. *Id.* at 324–25. If GM identifies such a reason, the burden shifts back to Milczak to prove GM's reason is pretextual. *Id.*

The district court concluded that Milczak failed to establish a prima facie case. It assumed that Milczak met the first and third prongs (over forty years old and qualified for the position) because the parties did not dispute them, but determined that Milczak did not meet either the second or the fourth prong (adverse action and similarly situated). We conclude that Milczak has shown an adverse action, but because he has not shown a material dispute that similarly situated younger employees were treated more favorably, his claim still fails at the prima facie stage.

*Adverse Action.* An adverse action is one in which an employee suffers "a loss of pay or benefits, a detrimental change in responsibilities, a negative change in the terms or conditions of employment, or some other actual and unfavorable change in job status." *Barrett v. Lucent Techs., Inc.*, 36 F. App'x 835, 841 (6th Cir. 2002). Here, that bar is easily met. Milczak argues that he suffered an adverse action because he (1) received lower annual raises and bonuses than he was entitled to; (2) did not receive an adequate bonus for his cost-cutting suggestions under GM's policy; and (3) was twice transferred to another department. Although, (1) and (2) do not qualify as adverse actions, (3) does. We consider these alleged adverse actions in turn.

As to the annual raises and bonuses, the undisputed annual compensation notices that show Milczak received a 2.5% raise in 2019 and 2020, and a 3% raise in 2021. The notices also show that Milczak received 100% of the bonus he was eligible to receive in all three years. While an employer's withholding of a discretionary raise or bonus that an employee is otherwise entitled to based on the terms and conditions of employment may constitute an adverse action, Milczak does not create a material question that he was entitled to an annual raise or annual bonus greater than what he received. *See Thornton v. Fed. Express Corp.*, 530 F.3d 451, 455 (6th. Cir. 2008). He asserts in his deposition that he should have received more but provides no other evidence to support that contention. Even reviewing the evidence in the light most favorable to Milczak, no reasonable juror could find that this constituted an adverse action.

The same is true of Milczak's complaint that he did not receive a reward for his cost-cutting suggestions. GM paid Milczak $300 for one idea; he says it should have been $25,000 under GM's policy for rewarding employees that create cost-saving measures. But, again, nothing beyond his own testimony shows that he was entitled to a $25,000 award. GM, pointing to its handbook and email records, shows that three out of four of Milczak's suggestions fell outside its bonus policy, and it paid him $300 for the remaining suggestion that fell within the policy. Of the three suggestions GM denied, one wasn't implemented, another fell within Milczak's job description, and the third was submitted outside of the timeline prescribed by the policy. Milczak disputes none of this.

The reassignments are a different story. Milczak argues that the first transfer was to a "horrible position" because he was not adequately trained and it required managing the notoriously difficult skilled trade employees. Further, the second transfer denied him the opportunity for overtime pay, did not utilize his skills, and required him to work later hours by himself. The district court dismissed the contention that either of Milczak's reassignments constituted adverse actions because neither rose "to some level of objective intolerability." Op., R. 42, PageID 759 (citing *Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 919 (6th Cir. 2014)). The Supreme Court has since clarified that, in evaluating whether job transfers amount to adverse actions, requiring "intolerability" is improper. In *Muldrow v. City of St. Louis*, a Title VII case, the Court declined to hold that "an employee challenging a transfer under Title VII

must meet a heightened threshold of harm." 144 S.Ct. 967, 973–74 (2024). Instead, it held Title VII only required plaintiffs "to show that the transfer brought about some 'disadvantageous' change in an employment term or condition." *Id.* at 974 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). In other words, a plaintiff must only show the transfer left them "worse off." *Id.* at 977. In *Muldrow*, the Court pointed to transfers to a new job site in a wind tunnel, positions involving nighttime work, and positions with changes in supervising duties as harms that would suffice to show an adverse action. *Id.* at 975. Because we rely on Title VII case law in the ADEA context, we apply that standard here. *Fedler v. Nortel Networks Corp.*, 187 Fed. Appx. 586, 591 (6th Cir. 2006) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985)).

Milczak's loss of opportunity to make overtime pay plainly impacts compensation, terms, and conditions of employment. *See Deleon*, 739 F.3d at 919. The same is true of the lack of adequate training, the supervisory responsibilities over difficult trade employees, the evening hours he was expected to work, the position's failure to utilize his skills, and the fact he was forced to work by himself. All of these things created at least "some harm" and left him "worse off." *See Muldrow,* 144 S.Ct. at 974. While GM argues that recognizing harm short of pay and rank would capture too much conduct because it would make all forced job transfers adverse employment actions, the Supreme Court did not share that concern. Milczak must still show that he was transferred *on account of his age.* *Cf. id.* at 976. And, as the Court noted, "[m]any forced transfers leave workers worse off respecting employment terms or conditions (After all, a transfer is not usually forced when it leaves the employee better off.)." *Id.* at 975–75. Because the second prong is met, we proceed to the fourth.

*Unfavorable Treatment*. To establish the fourth element of his prima facie case, Milczak must show that GM treated similarly situated, non-protected employees more favorably. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521–22 (6th Cir. 2008). He fails this test. Milczak's comparisons rest solely on office gossip recounted in his own deposition testimony. The statements alleging better treatment for younger employees lack any information specific enough to create a genuine issue of material fact. He provides no relevant dimension of comparison for these other employees, such as job title, location, or age. Without such evidence, a fact finder

cannot conclude that any of these employees were similarly situated. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584 (6th Cir. 1992). The district court was therefore correct in holding that Milczak does not establish a prima facie case of disparate treatment.

Even assuming Milczak did establish a prima facie case, GM would still be entitled to summary judgment. On the second step of *McDonnell-Douglas*, GM provides a legitimate, nondiscriminatory rationale: it had to transfer Milczak because it was set to wind down operations at DHAM and Milczak had not applied for any positions at other plants. Rather than lay off Milczak, GM transferred him to fill staffing gaps resulting from the closure. It also produced evidence that Milczak received his full salary and that his cost-saving suggestions were not eligible for special bonuses. Milczak cannot rebut any of GM's asserted nondiscriminatory reasons and show that they are pretextual. For one, Milczak's opening brief is silent about pretext, and we generally do not consider counterarguments raised for the first time on reply. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 540 (6th Cir. 2014). For another, Milczak does not dispute that his cost-saving suggestions were ineligible under GM's policy or provide concrete evidence that he was entitled to a higher wage and young employees were treated more favorably. Simply put, on this record he cannot show that GM's asserted nondiscriminatory reasons were pretextual.

## C. Retaliation

Milczak's final claim is for retaliation. Here, too, the evidence is circumstantial, and thus we again apply *McDonnell-Douglas*. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). To establish a prima facie case of retaliation, Milczak must show that: (1) he engaged in protected activity; (2) GM knew of his protected conduct; (3) GM took an adverse employment action towards him; and (4) there was a causal connection between the protected activity and the adverse employment action. *Fox v. Eagle Distrib. Co.,* 510 F.3d 587, 591 (6th Cir. 2007). Because Milczak cannot show that the adverse actions bore a causal connection to his protected activities under the fourth prong, we agree with the district court that he fails to establish a prima facia case.

First, we must determine whether Milczak engaged in a protected activity—he did. For an action to "be deemed protected activity under the ADEA," the plaintiff must have complained of "age discrimination." *Fox*, 510 F.3d at 591. Complaints of generalized harassment or poor treatment do not suffice. *Id*. Because Milczak complained to Donlin about Lazaroff's age-based comments and then filed an EEOC charge complaining of age-based discrimination, he engaged in protected activity.

The second prong requires us to discern not just whether GM knew of the protected conduct, but *when*. A retaliation claim requires that Milczak show GM took its adverse action in response to his protected activities—in this case, his accusations of age-based harassment. 29 U.S.C. § 623(d) (making it unlawful for an employer to discriminate against an employee "because" the individual has challenged an age-discriminatory practice). So any adverse actions taken before GM knew of the protected activity are necessarily excluded. Recall that Milczak's complaints to HR did not suggest age discrimination. Milczak's earliest age-based harassment complaint was August 8, 2019, when he allegedly told Donlin about Lazaroff's comments. That means GM was not on notice of his protected activity until August 2019.

Under prongs three and four (adverse action and causation), we consider adverse actions after August 8, 2019, which leaves Cuthbert's negative performance evaluations in February and December 2021. While bad reviews alone do not constitute adverse actions, here the reviews placed Milczak in jeopardy of tangible employment actions, so they suffice. *Muldrow,* No. 22-193 at 6–8 (holding that although plaintiffs bringing disparate treatment claims for transfers need only show "some harm," the "materially adverse" standard for retaliation claims still applies) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U. S. 53, 68 (2006))); *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (quoting *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 789 (6th Cir. 2000)). On causation, however, Milczak points only to the temporal proximity between his protected activity and the negative performance evaluations. Temporal proximity only suffices on its own to satisfy this prong when the "adverse employment action occurs very close in time after an employer learns of a protected activity." *Mickey*, 516 F.3d at 525. That's not the case here. Milczak got the evaluations over a year after he complained to Donlin and filed the EEOC charge (and four months *before* he filed this suit). Moreover, the

performance issues Cuthbert raised in his February and December reviews—including lacking work ethic and poor attendance—just formalized problems management had identified and raised with Milczak *before* he engaged in protected activities. Milczak, therefore, does not raise a reasonable inference of causation and, even having identified an adverse action, does not establish a prima facie case of age-based retaliation sufficient to defeat summary judgment.**[2]**

## CONCLUSION

We affirm the district court's grant of summary judgment for GM.

---

**[2]**Even if we were to proceed with the remaining steps of the *McDonnell-Douglas* analysis, Milczak would be unable to show GM's explanation for its actions was pretextual for the same reasons he could not show pretext on his disparate treatment claim.