NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0264n.06

Case No. 24-5893

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

FILED

May 30, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| BRADFORD ANTHONY GIFFORD, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| HAMILTON COUNTY, TENNESSEE; JIM HAMMOND, Hamilton County Sheriff; JOHN DOES, 1–15, | ) | |
| Defendants-Appellees. | ) | O P I N I O N |

Before: SUHRHEINRICH, MOORE, and NALBANDIAN, Circuit Judges.

**NALBANDIAN, Circuit Judge.** After being overserved at a school reunion, Bradford Anthony Gifford ended up in a holding cell at the Hamilton County Jail in Tennessee. While detained, Gifford was attacked by one of the cell's other occupants. As a result, Gifford received multiple injuries and had to be taken to the emergency room for treatment. And so he sued Hamilton County and its sheriff, alleging that they deprived him of his constitutional rights and violated state law by placing him in the holding cell. Following discovery, the defendants moved for summary judgment. The district court held that Gifford had provided no proof that would allow a reasonable jury to find in his favor and so granted summary judgment. And yet Gifford appeals, saying that material facts are in dispute. We disagree and so affirm.

**I.**

On October 2, 2021, Gifford attended a school reunion party at a classmate's home. Because he had been drinking, he felt that it was not safe to drive home. In essence, he claims that since his phone was dead and there were no sidewalks, he "walked nearby to the neighbor's house to ask for them to call a cab." R.43-2, Gifford Decl., p.2, PageID 644. The neighbors instead called the police, who arrived and arrested Gifford for public intoxication and criminal trespass.

And so the arresting officers took him to the Hamilton County Jail where, as part of normal intake procedures, a "Booking Pre-Classification Checklist" was prepared. Under the jail's intake policy, booking officers must "initially classify all inmates as maximum security." R.39-2, Hamilton Cnty. Sheriff's Dep't Pol'ys, p.28, PageID 217. This policy exists "because classification is a process that requires retrieving information from a variety of sources," which can be time-consuming. R.43-1, Statement of Material Facts in Dispute, p.7, PageID 641. And all corrections deputies, including those in charge of booking, receive training on these policies from the Sheriff's Office. Following this policy, the booking officer listed Gifford's pre-classification recommended security level as "maximum" on the checklist. So Gifford landed in Foxtrot 2, a temporary holding cell that houses pretrial detainees while officials complete the intake and booking process.

Early the next morning, officers from the Red Bank Police Department arrested Cyrion Brown and brought him to the jail. Gifford claims that Brown was arrested for assault and had "a history of violence." R.43-2, Gifford Decl., p.3, PageID 645. But Brown had not been detained at the jail before, so the booking officers had no direct indication that he would not behave appropriately in the temporary holding cell. And under normal practices, detainees are "not segregated during the intake and booking process based only on the charges alleged against them,"

2

so "a detainee [who] behaves appropriately" during the process isn't separated from other detainees. R.43-1, Statement of Material Facts in Dispute, p.3, PageID 637.

And so Brown also ended up in Foxtrot 2, awaiting classification. Gifford maintains that Brown looked like he was "high on cocaine" such that "his geeked up behavior was obvious to everyone, including the jail." R.43-2, Gifford Decl., p.3, PageID 645. Soon after he was placed in Foxtrot 2, Brown grabbed a blanket from another detainee and started to argue with him. Gifford told Brown and the other detainee to "[k]nock it off, it's 3 a.m." *Id.* As a result, Brown attacked Gifford. Brown's assault split Gifford's "chin wide open" and left him with "a severe concussion, two black eyes," and a herniated disc in his back. *Id.* And Gifford was transported to the hospital for x-rays and stitches. After the attack, Gifford told one of the Sheriff's Office deputies that Brown's assault "was completely unprompted." R.43-1, Statement of Material Facts in Dispute, p.6, PageID 640. And on his return to the county jail, Gifford asserts that the jail officials initially tried to put him back in Foxtrot 2—where Brown was still being held.

Gifford was released on bond the next day, and the charges against him were dropped for lack of probable cause. The county sheriff's office also brought criminal charges against Brown for the assault. But still the attack's effects lingered. In short, Gifford asserts that he has "continuous, intense knee pain and a herniated disc in [his] lower back" as well as "permanent nerve damage" in his face. R.43-2, Gifford Decl., p.3, PageID 645.

And so Gifford sued Hamilton County and its sheriff, Jim Hammond, for deprivations of due process under 42 U.S.C. § 1983 and various claims under Tennessee law. After discovery, the defendants moved separately for summary judgment, supporting their motions with several sworn declarations and evidence of training materials and official policies. In opposition to summary judgment, Gifford provided only his own sworn declaration and an unsworn statement

of material facts in dispute. After considering the evidence, the district court determined that Gifford had not shown a dispute of material fact and that the defendants were entitled to judgment as a matter of law on the federal claims. And the court declined to exercise supplemental jurisdiction over the remaining state-law claims, dismissing them without prejudice. Gifford appealed.

## II.

We review a district court's grant of summary judgment de novo. *Walden v. Gen. Elec. Int'l*, 119 F.4th 1049, 1056 (6th Cir. 2024). Summary judgment is appropriate only when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In effect, a genuine dispute of fact is material only when "a reasonable jury could return a verdict for the nonmoving party." *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566 (6th Cir. 2023) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). For that reason, "we construe the evidence and draw all reasonable inferences in favor of [the non-moving party]" when determining whether such a dispute exists. *Doe v. Univ. of Ky.*, 111 F.4th 705, 715 (6th Cir. 2024). And yet the nonmoving party must do more than introduce "some metaphysical doubt as to the material facts." *Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 783 (6th Cir. 2024) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Conclusory allegations—by themselves—aren't enough. *Boshaw v. Midland Brewing Co.*, 32 F.4th 598, 603 (6th Cir. 2022).

In his amended complaint, Gifford included three types of claims against the defendants. First, he asserted that Sheriff Hammond violated 42 U.S.C. § 1983 by depriving him of his due process right to be protected from violence committed by other detainees. Second, he claimed that Hamilton County's policies deprived him of his constitutional rights under *Monell v. Department*

4

*of Social Services*, 436 U.S. 658 (1978). And third, he brought several claims against both defendants under state law. But on appeal, Gifford argues only that his *Monell* claim presents a genuine dispute of material fact.[1] And so we ask whether summary judgment was appropriate for that claim.

In creating the modern framework for § 1983 claims, the Supreme Court first interpreted the statute's reference to "person" as excluding municipalities from suit. *See Monroe v. Pape*, 365 U.S. 167, 190 (1961). But less than two decades later, the Court revisited the issue in *Monell*, "overruling . . . *Monroe* insofar as it holds that local governments are not 'persons' who may be defendants in § 1983 suits." 436 U.S. at 700–01. And yet the Court clarified that a local or municipal government cannot be sued under a theory of *respondeat superior* "for an injury inflicted solely by its employees or agents." *Id.* at 694. For that reason, the local government's own "policy or custom" must cause the deprivation of the plaintiff's constitutional or legal rights. *Id.*

That holding gave rise to a new species of constitutional tort: the *Monell* claim. Within these claims are "four recognized theories" of municipal liability: (1) an illegal or unconstitutional official policy, (2) ratification of illegal or unconstitutional actions by a policymaker, (3) illegal or unconstitutional actions stemming from a failure to train or supervise, and (4) "a custom of tolerance or acquiescence of federal rights violations." *Helphenstine v. Lewis County*, 60 F.4th 305, 323 (6th Cir. 2023) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

---

[1] In his first and only brief before this court, Gifford doesn't mention a § 1983 claim against Sheriff Hammond in his personal capacity. And "[w]e normally decline to consider issues not raised in the appellant's opening brief." *Berry v. Experian Info. Sols., Inc.*, 115 F.4th 528, 540 (6th Cir. 2024) (quoting *Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir. 1989)). As a result, Gifford has forfeited any argument that the district court shouldn't have granted summary judgment for Hammond. *See Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018).

Gifford—at least arguably—raises all four theories in his briefing. And so we address each in turn to see if any present a genuine dispute of material fact.

Begin with an illegal or unconstitutional official policy. To succeed on this theory of liability, a plaintiff must "identify the municipal policy or custom" and show that his injury is traceable to that policy. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 403 (6th Cir. 2010). Gifford points to the county's official policy of placing all detainees into a single temporary-holding cell during the intake and booking process. In essence, he claims that this official policy deprives pretrial detainees like him of their constitutional rights by failing to segregate them by risk during these initial processes. And yet Gifford does not contest that the policy required segregation when a detainee fails to behave appropriately during intake. And though he claims in his affidavit that Brown "appear[ed] to be high on cocaine" such that "his geeked up behavior was obvious to everyone," Gifford fails to provide evidence of how that behavior alone revealed that Brown posed a risk to others in the temporary holding cell. R.43-2, Gifford Decl., p.3, PageID 645.

In effect, Gifford argues that the county's official policy caused a constitutional deprivation because it placed non-violent offense detainees like him in the same cell as those accused of violent crimes. But, as we have recognized, during initial intake and booking "the offense of arrest is not a reliable indicator of dangerousness; and even if it was there is often insufficient information about each new detainee's criminal history in order to make that assessment." *Sumpter v. Wayne County*, 868 F.3d 473, 481 (6th Cir. 2017) (citing *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 334–37 (2012)). And the mere fact that a policy does not prevent every random act of violence doesn't make it constitutionally insufficient. *See, e.g.*, *Hester v. Morgan*, 52 F. App'x 220, 225 (6th Cir. 2002) ("Despite precautions, it is impossible to stop all

6

random acts of violence in the prison environment."). And so Gifford cannot demonstrate that his injury stemmed from this official policy or custom, leaving no dispute of material fact on this point.

Second, we analyze whether municipal liability exists because of a policymaker's ratification of illegal or unconstitutional actions. Under this theory, municipal liability attaches when a "decisionmaker [who] possesses final authority to establish municipal policy with respect to the action" approves the unconstitutional conduct. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). But a plaintiff can also demonstrate municipal ratification by showing a failure to investigate when there were "multiple earlier inadequate investigations [that] concern comparable claims." *Moiser v. Evans*, 90 F.4th 541, 549 (6th Cir. 2024) (alteration in original) (quoting *Pineda v. Hamilton County*, 977 F.3d 483, 495 (6th Cir. 2020)). And yet Gifford can do neither. Indeed, he has not identified the policymaking official who could have ratified the allegedly unconstitutional conduct. Nor has he shown a pattern of failing to investigate comparable claims.[2] And so even under a ratification theory, Gifford cannot show a dispute of material fact that prevents summary judgment.

Third, we consider Gifford's claim that the county failed to train and supervise its employees on risk prevention and monitoring detainees. To establish a failure-to-train or a failure-

---

[2] We note that this circuit has not clarified how many instances of comparable conduct a plaintiff must show or how similar they must be to his own injury. *See Franklin v. Franklin County*, 115 F.4th 461, 472 (6th Cir. 2024). But that doesn't matter here because Gifford has not provided evidence of any instances of comparable conduct and corresponding failures to investigate by Hamilton County. As the district court noted, the only proof that Gifford offered to oppose summary judgment was his three-page declaration, which does not discuss comparable conduct or a failure to investigate. *Gifford v. Hamilton County*, No. 1:22-cv-245, 2024 WL 4195292, at *2 n.1 (E.D. Tenn. Sept. 13, 2024). To overcome this deficit, Gifford points to the County's admissions in its pleadings regarding past assaults and rapes at the jail. But he fails to explain how these incidents compare to his incident or how the jail officials failed to investigate them. And so he has not shown a pattern of insufficient investigation leading up to his assault.

to-supervise claim, a plaintiff must show both that (1) the municipality acted with "deliberate indifference" to the risk of constitutional violation and (2) the improper training or supervision "actually caused" the plaintiff's injury. *Gambrel v. Knox County*, 25 F.4th 391, 408–09 (6th Cir. 2022) (first quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997); and then quoting *Connick v. Thompson*, 563 U.S. 51, 70 (2011)). And to show deliberate indifference, the plaintiff must point to either a "pattern of similar constitutional violations by untrained employees" or else "a single violation of federal rights, accompanied by a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation." *Shadrick v. Hopkins County*, 805 F.3d 724, 738–39 (6th Cir. 2015) (internal quotation marks omitted); *see also Ouza v. City of Dearborn Heights*, 969 F.3d 265, 286–87 (6th Cir. 2020).

Gifford cannot make the initial showing of deliberate indifference by the county as to a constitutional violation. After all, the evidence Gifford provided in opposition to summary judgment doesn't demonstrate an ongoing pattern of similar constitutional violations caused by a failure to train or supervise county employees. In a similar vein, he can't show that the risk in this case was so obvious and likely to recur that the county's failure to train or supervise can be established by a single incident. Such single-incident claims of municipal liability, as we have clarified, remain "rare" precisely because the plaintiff bears such a high burden in showing that the need for specific training and supervision was "obvious." *Gambrel*, 25 F.4th at 410 (internal quotation marks omitted). For that reason, Gifford has not met his burden. While he argues that there is a genuine issue of material fact as to the adequacy of the county's training and supervision, his failure to introduce sufficient evidence hamstrings this argument. And so he cannot succeed under a failure-to-train or failure-to-supervise theory of liability.

Fourth and finally, we address Gifford's claim that the county had a custom of tolerating constitutional violations. To make such a claim, a plaintiff must show "(1) a clear and persistent pattern of illegal activity, (2) which the [county] knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the [county's] custom was the cause of the [constitutional deprivation]." *Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005). Gifford's claim fails on the first prong. Once again, the failure to introduce sufficient evidence to oppose summary judgment means that Gifford cannot show a pattern of relevant illegal activity— much less a clear and persistent one. *See Winkler v. Madison County*, 893 F.3d 877, 902 (6th Cir. 2018). And so Gifford can't show a genuine dispute of material fact that must proceed to a jury, meaning that his invocation of this last theory of municipal liability fares no better than the previous three.

**III.**

Gifford cannot point to a genuine dispute of material fact that would make summary judgment inappropriate. Since the county is entitled to judgment as a matter of law on the asserted *Monell* claim, we AFFIRM.